The next case today is Deborah Lauffer v. Acheson Hotels, LLC, Appeal Number 21-1410. Attorney Bacon, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court, my name is Thomas Bacon and I am the counsel for the appellant Deborah Lauffer. Shall I proceed? Yes, please. The issue presented today is whether under the plain language of the regulation and the statute, a disabled person suffers cognizable injury when they encounter a discriminatory online reservation service or whether a court may impose the additional requirement that they intend to book a room at the hotel. Courts are divided on this issue and it basically turns on two interpretations. One is whether or not Havens Realty applies and the second is whether or not under Spokio and now the recent decision in TransUnion, a court can go outside of the plain language of the statute and still require additional injury. First, virtually, with the exception of the Supreme Court from the Fifth Circuit recently, virtually all the relevant Supreme Court and Circuit of Court opinions that have been considered in the analysis and argued all either hold or at least acknowledge that a plaintiff suffers complete injury when they are deprived of their right to information and nothing additional is required. That includes such cases as Havens Realty, Aikens, Public Citizens, Spokio, and TransUnion from the Supreme Court as well as Circuit Court opinions such as the Seventh Circuit's opinion in Carello, Casillas, the Eleventh Circuit's opinions in Maransky and Tritchell. We cite all the opinions in full in the brief and this court had additionally held the same in Arnheim. Nothing additional is required, the main court being the only exception. The next major issue is whether or not the Supreme Court, whether in Spokio or TransUnion or elsewhere, had intended to overturn Havens Realty and the vast body of civil rights cases in which the Supreme Court and various Circuit Courts over the course of decades have recognized test of standing. That's touched upon in the Tritchell and TransUnion cases. For example, the TransUnion case, the Supreme Court talked about downstream consequences and while it wasn't sure whether, while it's unclear whether or not it meant to apply that to information injury which it already held does not apply or not, it cited the Tritchell case, the Eleventh Circuit's Tritchell case on that point and Tritchell made the point that, well, it considered whether or not Havens Realty applies or whether or not downstream consequences are required and it drew the line at discrimination. Havens Realty doesn't apply to the Tritchell case because that was neither was TransUnion, neither was Spokio. Spokio and TransUnion involved the Fair Debt Collection Practices Act and the Fair Credit Reporting Act. Elsewhere, TransUnion also specifically recognized that discriminatory treatment was one of the exceptions. It was one of those instances, like Spokio, discussed instances where Congress could raise the level of concrete de facto injury and it referenced Wright v. Allen for the point of discriminatory treatment. So, whereas the Spokio court held that its additional injury requirements didn't apply to such things as being deprived of the right to information, the TransUnion court said the same thing about discriminatory treatment. Under Havens Realty, the Supreme Court applied the rules of statutory construction in the plain language of the Fair Housing Act and held that a tester had standing to sue for being deprived of his right to truthful information with respect to housing, even though he had no intention of making use of that information. The ADA was drafted several years afterward. Mr. Bacon, I apologize for interrupting your argument. There's a question that I want to ask you and I want to make sure that we get to it before your time runs out. You're about halfway through your argument time at this point. My question is simply this. In Lujan, the Supreme Court said that an intent to visit an area quote-unquote soon was not an intent that was alleged with specific concreteness. You have said, your client has said that she intends to revisit the site. Can you just lay out for me how she gets over the Lujan hurdle in that she has alleged with sufficient concreteness that she intends to revisit, where soon wasn't good enough in that case? Can you just lay that out for me? The plaintiff has a system and has had a system where she lists all the hotels she sued. She pursuant to that system, she would have visited each one several times before the lawsuit was filed. When the lawsuit is filed, she's typically notified and marks a date out for approximately 30 days. Afterward, she revisits again. She has in fact, revisited the online system of every hotel she has sued after those lawsuits were filed. There was a time in May of last year when she again went through and revisited the online system of every hotel. She again revisited the online system of every hotel in June of this year in context with a trip that she actually did make from Florida through Texas to Colorado and up to Maine and then through New York and through such states as Massachusetts and Connecticut and on back down the east coast to Florida. Although that's outside the record, but she did again review the online reservation systems of hotels then. Pursuant to her pre-existing system, when a case either settles or there's some sort of a court order stating when the defendant is supposed to bring a system into compliance with the law, she marks that date down and again revisits it. As to that, that's contingent on some sort of resolution of the case? That last aspect is, yes. In answer to your question specifically as of the time she filed the complaint, when the complaint is filed she marks a date down and revisits it approximately 30 days afterward. Thank you. Is your argument that she did intend or that it's not necessary for her to intend to visit? You make an argument that she's doing an investigatory research to make travel plans and perhaps I think you mentioned to even determine if she wanted to a legitimate intent to travel. For purposes of this appeal, the issue that we raise strictly is whether or not testers have standing and intent can or cannot be imposed as a requirement. Under Havens Realty, that cannot be imposed as a requirement because in Havens Realty, testers had standing even though plaintiff Coleman did not intend to rent an apartment. The ADA was enacted several years after Havens Realty and it was based on the analysis pertaining to plaintiff Coleman and the fact that the operative language was the same, namely any person, that the 10th Circuit in Tandy and then the 11th Circuit in Houston v. Merritt held that intent cannot be imposed as a requirement and that testers have standing under Havens Realty. The Havens Realty applies. The Houston v. Merritt was followed by five other circuits including this one. The short answer I think I'm understanding what you're saying is that to frame the tester issue, you are not arguing that she has any intention to ever go at that hotel. We're leaving that argument out, the latter argument out, yes. Where it turns is courts that impose the additional intent argument all hold that Havens Realty does not apply despite the fact that the tester standing recognition in six different circuits is premised on the fact that it does, including this court's opinion in Suarez. It doesn't reference Havens Realty but it cites Houston v. Merritt on that point. For example, in Mann, the 5th Circuit, which ruled against us on this point, held that the Havens Realty does not apply because the information had some relevance to the Havens Realty plaintiff. Mann had the wrong plaintiff. Plaintiff Coles did in fact intend to rent an apartment in the Havens Realty case. Plaintiff Coleman had no such intention. He had no intention of doing anything with the information. He was strictly a tester and the Supreme Court spent considerable language to how and why Plaintiff Coles had standing despite that lack of intent. It is based on the Coleman analysis, not the Coles, that the six different circuits have a courted tester standing in the ADA. Does it make any difference that Coleman was given false information and your client was essentially given none of the information to which she should have been entitled? Havens Realty phrased it in terms of the right to information on multiple passages. The Aikens Court referred to Havens Realty as being about the deprivation of the right to information. Being deprived of the right to information has been likewise recognized not transunion. It has been recognized by this court in Arnheim. It is recognized by in addition numerous circuit courts that we cite in our brief. The other typical analysis that the intent courts apply is that Havens Realty applied to specific information and a disabled person does not have the right because they are viewing the same information that the entire public does. I am not sure I heard an answer to my question. Does it make a difference that Coleman was given false information whereas your client was given no information? There is nothing that distinguishes that other than the courts that impose the intent requirement do reference that Havens Realty was about intentional racial discrimination. There are other courts that disagree with that analysis. The fact that Havens Realty basically applied the language of the statute and held that deprivation of the right to information was fully actionable. I do not know of any basis to draw a distinction between intentional racial discrimination versus being deprived of the right to information particularly when in the context of the large body of case law since Havens Realty that is recognized that being deprived of the right to information is fully actionable with nothing additional required including Spokio. There are a couple of other points that the minority courts or not minority courts but the courts that impose the intent requirement typically say one is that a disabled person when they are reviewing a discriminatory online reservation system is looking at the same information or lack thereof that the entire public is looking at and therefore it is not actionable. That overlooks such cases as Akins and public citizen and TransUnion and Spokio as well as numerous circuit court opinions that we cite that all hold that this applies to public information. In this case, the lower district court also held that the purpose of the ADA was really about access to the place of public accommodation facility itself. That misreads the statute. The statute references not only deprivation of full and equal enjoyment of a facility but also a service or a privilege or advantage. It does not place facilities over any other elements such as facilities such as services. The lower court, the courts which impose the intent requirement also cite Spokio. For example, in Atchison which ruled against the DC circuit, simply its opinion consisted of the words C Spokio and that was it. They all overlook the express recognition in Spokio which recognizes the principle that being deprived of the right to information is fully actionable with nothing additional required. Let me stop you there Mr. Bacon and see if there are additional questions. Seeing none, I'd like to thank you for your argument and ask that you now mute your audio and video. Thank you, Honor. And we'll hear from Ms. Morris if you would unmute. Good morning, Your Honor. May it please the court. My name is Sally Morris. I am counsel for the in cottages which is a small family owned and operated facility in Wells, Maine. So we're here talking about standing and contrary to the appellant's view of this case where there's been some interpretation into the statutory language or the cause of action and intent requirement, that's not the case. Article 3 standing is a constitutional requirement and as the court said in June of this year in TransUnion v. Ramirez, to have article 3 standing to suit in federal court, scientists must demonstrate among other things that they suffered a concrete harm. No concrete harm, no standing. Central to the assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a lawsuit in American courts. I just want to point out here that there are sort of limited contours to this case. The plaintiff has not alleged that my client's website is inaccessible and they have not alleged that there's some kind of violation of a barrier removal requirement in the ADA. This case arises out of the purported right to encounter websites in your home in Florida and give rise to action against a hotel that you will never go to in Maine. The district court's analysis in this case was correct and it should be affirmed. Well they're looking at the reservation rule which does specifically confer the right of a handicapped person to be able to get information that allows them to make determinations about whether a facility is accessible to them. Right, so two things about the reservations rule and let's assume that there is an injury that can arise out of that statute. You still have to meet the standing requirements. You still have to tie the supposed violation of the reservations rule to harm to the plaintiff. The violation of statute has to have some consequence to the plaintiff. Remaining in your home and encountering a website does not create harm. Well the consequence to the plaintiff is that she cannot make a determination as to whether this facility is available to her or compare the facilities in one particular hotel to what's available in another one. So the reservations rule is a vehicle by which the ADA is used to access facilities. The rule doesn't have any specific requirements in terms of listing. There's no such thing as a listing of an ADA rule. The Department of Justice guidelines on the reservations rule make very clear that it's not intended to be an accessibility survey. It simply requires enough information on a website to identify and describe accessible features and enough detail to reasonably permit individuals with a disability to independently assess whether they meet their needs. And like many other provisions of the ADA, which envisions an interactive process, the Department of Justice guidelines talk about the ability of an individual that all of these institutions, all of these organizations could be different. These are individualized circumstances and claims and rights and some interaction with the hotel is contemplated in follow-up of the reservations rule. But nonetheless, the informational injury the courts uniformly say is not enough. The informational injury has to be of some relevance to the plaintiff's activity. And if the plaintiff is not going to ever visit the hotel, the relevance isn't there. So how do you distinguish our opinion in Suarez? Well, the Suarez case was involved a barrier removal case where the people actually went to the facility, attempted to access the facility and claimed that their rights were violated because they couldn't use, I think it was the restrooms and the counter and things like that. They actually did engage the harm that they alleged in terms of the barrier removal was tied to the statutory violation under which they were making their claim. What about Coleman and Hazen? It was Coleman was a tester, had no intent whatsoever to rent a place in either of the places and yet the informational injury was enough. Because that statute requires an affirmative duty to disclose truthful information about the housing. And when there was a misrepresentation, an actual falsehood about the house, the violation of the rule was complete and tied to the discrimination alleged. The white plaintiff in that case was given correct information. That's right. And the people who were given correct information did not have standing. No, they did have standing. Well, I have to follow up with that case. There were some people who were given the standard, the people who were given standing, the people who were given and some of the plaintiffs were not given standing. My understanding was is the people who were given the correct information were not given standing, but I'd have to follow up on the case. But I think in terms of the reservations, there's a real distinction between what's required. This is not a sunshine. It's not a disclosure law. There's no assertion that there's a lack of information here. How can you say this isn't a disclosure law? I thought it's a requirement that every public place of accommodation disclose on its website the extent to which it's handicapped accessible. That sounds to me like a disclosure law. It's required to provide sufficient information describing the features on the website. So, Congress told the plaintiff that your client would provide the plaintiff and was legally required to supply the plaintiff with certain information if she went to your client's website. She went to the website and your client didn't give the information. Why isn't that informational injury? Well, even if it is informational injury, you still have to meet article 3 standards. As the district court's analysis shows, you have to be able to show that where the statutory provisions that issue were established to protect the country interests of the plaintiff and that the specific violation actually harms the plaintiff and that the harm must be imminent. It's important here that in terms of seeking injunctive relief, without a plan to travel, there's no immediate threat to injury. There's no connection between the two. I think, you know, and I want to just sort of point out in the Griffin case, the department for the Griffin versus Department of Labor case, that is a case involving disability discrimination. That's a case where the individual claimed that the website was inaccessible, which is not the case here. The individual claimed that the website was inaccessible and yet because the person was barred from membership by law to the credit union, the court held that there wasn't a sufficient relatedness between the harm that the plaintiff was asserting and the right that was protected. The courts have pointed to this because there is a concern about the expansion of the standing doctrine in the informational age. The Griffin court specifically recognized at page 653 that they were moving narrowly to explore this new territory. And at 654, they talked about without some kind of requirement that concreteness requires that the harm, the specific violation actually harmed the plaintiff, the federal court would transform into a vehicle for which the vindication of value interest of concern bystanders can be brought. And that's just not what Article III permits. Similarly, Brintley versus Aeroquip credit union referred at 49 was concerned about this idea of encounter standing. You could be browsing the web, looking for dignitary slides, and that would be enough to give Article III standing. Ms. Morris, I apologize for interrupting, but I would like to ask a different question. So assuming that we don't accept several of your arguments and just going to the question of her intent to revisit the site, the alleged informational injury, Mr. Bacon said that his client has said that she intends to revisit the website as she does other sites and that she has a spreadsheet where she keeps track of when she has visited and when she intends to revisit the site. On that issue, has she alleged enough to get over the Lujan standard of concrete allegations of specific injury, imminent injury? And if not, why not? No, for several reasons. One is that she is not alleging that the website is inaccessible. So revisiting the website would be relevant if this were a case claiming that the website were inaccessible. That is not what this case is claiming. So that's one reason. The other reason is, and the district court refers to this in their opinion, there's some briefing about it, is that the website has changed. And so particularly with regard to the injunctive relief, ongoing imminent threat, which is what's required in the standing, the elements of standing. Is there a right to nominal damages here under the statute? I believe there's a right to injunctive relief and attorney's fees. I can't answer about the nominal damages. I don't know. No, but it doesn't move the case if your client in response to litigation then changes their practice, does it? I think it does in terms of the injunctive relief requested. How about attorney's fees? Well, I think the attorney's fees would be determined on the assessment of which claims the plaintiff may have succeeded on. You know, as you know, you can't recover attorney's fees for cases that claims that you're not successful on. So I think it would be dependent on that and there would be a mix of that in this case. But it really, I'm sorry, did I? Why don't you take 30 seconds? I'm sorry, Judge Thompson has a question. Going back to the reservation rule where it says place of lodging with respect to reservations made by any means, I think the plaintiff is also arguing that in addition to reservations being made directly on your client's website that reservations are also taken through Expedia, etc., which has not been corrected. So would she be entitled to injunctive relief until those other third parties are reflecting accurate information? So that record wasn't developed below the court because of the lack of concreteness of the harm regardless of which website it occurs on. That wasn't developed and I think there's a real question as to whether my client independently operating a hotel is responsible for what Expedia or whatever of these third party websites do. It's not clear to me, and this is beyond the record, but it was not developed to the extent to which there may be a contractual relationship between third party websites and my client who is not directly posting on those websites. Expedia wasn't sued. My guess is if Expedia said your client was closed and out of business, your client would do something about it. Well, they may or may not. I don't know that Expedia does update its third party websites that frequently. It wasn't addressed below, but I think the reason it wasn't addressed below is because regardless of a third party website or my client's website, encountering a website in your home in Florida, I mean, this case, while not exactly the main Hawaii analogies that Justice O'Connor used in the Allen versus Wright case and Justice Kavanaugh used in the transunion case, it is Maine, Florida, and there's no connection, no established connection or no harm that my client is causing to the plaintiff in Florida that is tied to my client's activity if she has no intent to ever come to Maine and stay in her hotel. It's the encounter cases that the courts have been concerned about and the expansion of the standing doctrine that it's riskier. And I'll just finish by saying that the district court's opinion is correct. They applied the elements of the doctrine and they applied them Thank you very much. Thank you, Ms. Morris. That concludes arguments in this case. Attorney Bacon and Attorney Morris, you should disconnect from the hearing at this time.